IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BERNARD STARR<br>8561 Whipporwill Road<br>Ravenna, Ohio 44266<br><br>          Plaintiff,<br><br>     v.<br><br>CARDINAL LOGISTICS MANAGEMENT<br>CORPORATION<br>1885 Cornerstone Parkway<br>Twinsburg, Ohio 44087<br><br>     **Serve also:**<br>     Cardinal Logistics Management<br>     Corporation<br>     c/o CT Corporation System<br>     4400 Easton Commons Way<br>     Suite 125<br>     Columbus, Ohio 43219<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff, Bernard Starr, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Starr is a resident of the city of Ravenna, county of Portage, state of Ohio.

2. Cardinal Logistics Management Corporation ("Cardinal") is a foreign corporation that operated a business located at 1885 Cornerstone Parkway, Twinsburg, Ohio 44087.

3. Cardinal was at all times hereinafter mentioned an employer within the meaning of 29 U.S.C. § 631 *et seq*.

4. Cardinal was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

## JURISDICTION & VENUE

5. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 in that Starr is alleging federal law claims under 29 U.S.C. § 621 *et seq*.

6. All material events alleged in this Complaint occurred in Summit County.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8. Within 300 days of the conduct alleged below, Starr filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2020-02877 against Cardinal.

9. On January 11, 2021, the EEOC issued and mailed a Notice of Right to Sue letter regarding Starr's EEOC Charge of Discrimination.

10. Starr has received a Notice of Right to Sue letter from the EEOC, in accordance with 42 U.S.C. 2000e-5(f)(1), which is attached hereto as Exhibit 1.

11. Starr has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

12. Starr filed this Complaint within 90 days of receiving the Notice of Right to Sue letter.

## FACTS

13. Starr had a heart stent surgically implanted in 1995.

14. Per the Department of Transportation ("DOT") regulations, Starr needed to pass a heart stress test every two years to be cleared to drive with his CDL.

15. Starr's condition constitutes a physical impairment.

16. Starr's condition substantially impairs one or more of his major life functions, including working.

17. As a result of suffering from a heart stent, Starr is disabled.

18. Alternatively, Cardinal perceived Starr to be disabled.

19. Despite any real or perceived disability, Starr was capable of performing his essential job functions with or without reasonable accommodation(s).

20. Starr initially worked for O'Reilly Auto Enterprises LLC ("O'Reilly") in or around April 2017.

21. O'Reilly employed Starr as a CDL truck driver.

22. Cardinal took over the freight delivery driving service for O'Reilly on or around November 2, 2019.

23. During the transition, Cardinal took over Starr's employment.

24. Cardinal had the authority to terminate Starr's employment.

25. Cardinal had the authority to set Starr's rate of pay.

26. Cardinal controlled all material aspects of Starr's employment, such as hours worked and duties performed.

27. Starr had a strong history of performance with Cardinal.

28. Starr consistently received pay raises.

29. Starr did not have any history of meaningful discipline.

30. Clint Gallaspie was Starr's immediate supervisor.

31. Cardinal employed Gallaspie as a terminal supervisor.

32. During all material events asserted herein, Gallaspie has and/or had authority to hire, fire, and/or discipline employees.

33. Gallaspie did not participate in the decision to hire Starr.

34. During his employment with Cardinal, Starr was the oldest CDL truck driver.

35. As of the date of Starr's separation of employment from Cardinal, Starr was 78 years old.

36. On multiple occasions, Gallaspie asked Starr when he planned to retire.

37. Gallaspie asked Starr about his retirement plans because of Starr's age.

38. Gallaspie treated Starr differently than other similarly-situated employees because of his age.

39. Gallaspie did not ask significantly younger employees about their retirement plans.

40. Starr went to the DOT physician in August 2020 for his annual physical.

41. The DOT physician scheduled Starr for his stress test to be held on or around September 25, 2020 ("September Stress Test").

42. Starr notified Gallaspie of the September Stress Test.

43. When Starr notified Gallaspie of the September Stress Test, it was the first time Gallaspie was put on notice of Starr's heart condition.

44. When Starr notified Gallaspie of the September Stress Test, it was the first time Cardinal was put on notice of Starr's heart condition.

45. Starr drove in a truck where a camera would activate if he slammed on the brakes.

46. On or around September 16, 2020, a Jeep cut in front of Starr's truck and caused Starr to slam on the brakes of his truck ("Near Miss Incident").

47. In response to the Near Miss Incident, Gallaspie accused Starr of using his cell phone while driving in violation of Cardinal's cell phone policy.

48. Gallaspie provided Starr with a copy of Cardinal's cell phone policy and required him to sign it on September 16, 2020.

49. The next day, Gallaspie required Starr to sign a Final Written Warning for violating Cardinal's cell phone policy based upon the Near Miss Incident.

50. Gallaspie told Starr that the Final Written Warning would fall off his record after a year.

51. Upon information and belief, Gallaspie did not issue discipline to significantly younger employees for violating Cardinal's cell phone policy.

52. Upon information and belief, Gallaspie did not jump to issuing a final written warning to significantly younger employees for violating Cardinal's cell phone policy.

53. The next day, on September 18, 2020, Cardinal terminated Starr's employment.

54. Cardinal's reason for terminating Starr was pretextual.

55. At the time of termination, Starr was qualified to perform all essential job duties.

56. At the time of termination, Starr was adequately performing all essential job duties.

57. Cardinal terminated Starr's employment because of his age.

58. Cardinal terminated Starr's employment because of his disability.

59. Alternatively, Cardinal terminated Starr's employment because of his perceived disability.

60. Cardinal terminated Starr's employment with the intent to hire a significantly younger employee.

61. Cardinal terminated Starr's employment with the intent to hire a non-disabled employee.

62. Alternatively, Cardinal terminated Starr's employment with the intent to hire an employee it did not perceive to be disabled.

63. Cardinal's termination of Starr's employment permitted the retention and/or hiring of individual(s) who were significantly younger than Starr and/or not belonging to a protected class due to age.

64. Cardinal's termination of Starr's employment permitted the retention and/or hiring of individual(s) who were not disabled.

65. Cardinal's termination of Starr's employment permitted the retention and/or hiring of individual(s) who Cardinal did not perceive to be disabled.

66. Upon information and belief, Defendant has a progressive disciplinary policy ("Progressive Discipline Policy").

67. Defendant has used Progressive Discipline Policy when disciplining employees under the age of 40.

68. Defendant has used Progressive Discipline Policy when disciplining non-disabled employees.

69. Defendant has used Progressive Discipline Policy when disciplining employees it did not perceive to be disabled.

70. Under Progressive Discipline Policy, Starr had not received any meaningful discipline.

71. Under Progressive Discipline Policy, Starr had not received any verbal warnings for Cardinal cell phone policy.

72. Under Progressive Discipline Policy, Starr had not received any written warnings for Cardinal cell phone policy.

73. Under Progressive Discipline Policy, Starr had not been suspended for Cardinal cell phone policy.

74. Defendant skipped steps under the Progressive Discipline Policy when it terminated Starr's employment.

75. Skipping steps under the Progressive Discipline Policy is an adverse employment action.

76. Skipping steps under the Progressive Discipline Policy is an adverse action.

77. Defendant intentionally skipped steps under the Progressive Discipline Policy when it terminated Starr's employment.

78. Defendant willfully made the decision to skip steps under the Progressive Discipline Policy when they terminated Starr's employment.

79. Terminating Starr's employment was an adverse employment action.

80. Terminating Starr's employment was an adverse action.

81. Defendant intentionally terminated Starr's employment.

82. Defendant willfully made the decision to terminate Starr's employment.

83. Defendant terminated Starr's employment in violation of its Progressive Discipline Policy due to Starr's disability.

84. Defendant terminated Starr's employment in violation of its Progressive Discipline Policy due to Starr's perceived disability.

85. Defendant terminated Starr's employment in violation of its Progressive Discipline Policy due to Starr's age.

86. As a direct and proximate result of Defendant's conduct, Starr has suffered and will continue to suffer damages.

87. As a result of being discriminated against on the basis of his age, Starr suffered emotional distress.

88. As a result of being discriminated against on the basis of his disability, Starr suffered emotional distress.

89. Alternatively, as a result of being discriminated against on the basis of his perceived disability, Starr suffered emotional distress.

**COUNT I: AGE DISCRIMINATION IN VIOLATION OF 29 U.S.C §621 *et seq.***

90. Starr restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

91. Starr was 78 years old at the time Cardinal terminated his employment.

92. At all times relevant, Starr was a member of a statutorily protected class under the Age Discrimination Act ("ADEA") 29 U.S.C. § 631 *et seq.*

93. Cardinal treated Starr differently from other similarly situated employees based on his age.

94. Starr was fully qualified for his position with Cardinal.

95. Cardinal treated Starr less favorably than similarly-situated, significantly younger employees.

96. Cardinal treated Starr less favorably than similarly-situated, significantly younger employees because of his age.

97. On multiple occasions, Gallaspie asked Starr when he planned to retire.

98. Gallaspie asked Starr about his retirement plans because he was older.

99. Gallaspie did not ask significantly younger employees about their retirement plans.

100. Gallaspie gave Starr a Final Written Warning for violating Cardinal's cell phone policy.

101. Gallaspie had not given Starr a verbal warning for violating Cardinal's cell phone policy.

102. Gallaspie had not given Starr any prior written warnings for violating Cardinal's cell phone policy.

103. Upon information and belief, Gallaspie had not given significantly younger employees any discipline for violating Cardinal's cell phone policy.

104. Gallaspie skipped steps in Cardinal's Progressive Discipline Policy when he gave Starr a Final Written Warning for violating Cardinal's cell phone policy.

105. Gallaspie did not skip steps in Cardinal's Progressive Discipline Policy when he disciplined significantly younger employees.

106. Gallaspie skipped steps in Cardinal's Progressive Discipline Policy when he disciplined Starr due to his age.

107. 29 U.S.C. § 621 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of that employee's age.

108. Cardinal violated 29 U.S.C. § 621 *et seq.* by applying employment policies in a disparate manner based on an employee's age.

109. Cardinal violated 29 U.S.C. § 621 *et seq.* by applying disciplinary policies in a disparate manner based on an employee's age.

110. Starr, at age 78, was a member of a statutorily-protected class under 29. U.S.C. § 621 *et seq.* at the time he was terminated from his employment with Cardinal.

111. Starr was terminated from his employment on or around September 18, 2020.

112. Cardinal terminated Starr's employment because of Starr's age.

113. Cardinal violated 29 U.S.C. §621 *et seq.* by discriminating against and terminating Starr based on his age.

114. Upon information and belief, Starr's position was filled by person(s) outside of Starr's protected class under 29 U.S.C. § 621 *et. seq*.

115. Cardinal's termination of Starr's employment permitted the retention and/or hiring of individual(s) who were significantly younger than Starr.

116. As a direct and proximate cause of Cardinal's wrongful conduct, Starr has suffered and will continue to suffer damages.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. 4112.01 *et seq.***

117. Starr restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

118. Starr suffers from a heart stent.

119. Starr's condition constituted a physical impairment.

120. Starr's condition substantially impaired one or more of his major life activities including working.

121. As a result of suffering from a heart stent, Starr is disabled.

122. Alternatively, Cardinal perceived Starr as being disabled.

123. Despite any real or perceived disabling condition, Starr was capable of performing his essential job functions with or without reasonable accommodation(s).

124. Cardinal treated Starr differently than other similarly-situated employees based on his disabling condition.

125. Cardinal treated Starr differently than other similarly-situated employees based on his perceived disabling condition.

126. Gallaspie gave Starr a Final Written Warning for violating Cardinal's cell phone policy.

127. Gallaspie had not given Starr a verbal warning for violating Cardinal's cell phone policy.

128. Gallaspie had not given Starr any prior written warnings for violating Cardinal's cell phone policy.

129. Upon information and belief, Gallaspie had not given non-disabled employees any discipline for violating Cardinal's cell phone policy.

130. Alternatively, upon information and belief, Gallaspie had not given employees he did not perceive to be disabled discipline for violating Cardinal's cell phone policy.

131. Gallaspie skipped steps in Cardinal's Progressive Discipline Policy when he gave Starr a Final Written Warning for violating Cardinal's cell phone policy.

132. Gallaspie did not skip steps in Cardinal's Progressive Discipline Policy when he disciplined non-disabled employees.

133. Alternatively, Gallaspie did not skip steps in Cardinal's Progressive Discipline Policy when he disciplined employees he did not perceive to be disabled.

134. Gallaspie skipped steps in Cardinal's Progressive Discipline Policy when he disciplined Starr due to his disability.

135. Alternatively, Gallaspie skipped steps in Cardinal's Progressive Discipline Policy when he disciplined Starr due to his perceived disability.

136. On or about September 18, 2020, Cardinal terminated Starr's employment without just cause.

137. Cardinal terminated Starr's employment based his disability.

138. Alternatively, Cardinal terminated Starr's employment based his perceived disability.

139. Cardinal violated R.C. § 4112.01 *et seq.* when it discharged Starr based on his disability.

140. Cardinal violated R.C. § 4112.01 *et seq.* when it discharged Starr based on his perceived disability.

141. Cardinal violated R.C. § 4112.01 *et seq.* by discriminating against Starr based on his disabling condition.

142. Cardinal violated R.C. § 4112.01 *et seq.* by discriminating against Starr based on his perceived disabling condition.

143. Starr suffered emotional distress as a result of Cardinal's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

144. As a direct and proximate result of Cardinal's conduct, Starr suffered and will continue to suffer damages, including economic and emotional distress damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Starr demands from Cardinal the following:

(a) Issue an order requiring Cardinal to restore Starr to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against Cardinal of compensatory and monetary damages to compensate Starr for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Cardinal in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Starr claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

          Respectfully submitted,

          /s/ *Daniel S. Dubow*
          Brian D. Spitz (0068816)
          Daniel S. Dubow (0095530)
          **THE SPITZ LAW FIRM, LLC**
          25200 Chagrin Boulevard, Suite 200
          Beachwood, OH 44122
          Phone: (216) 291-4744
          Fax: (216) 291-5744
          Email:  brian.spitz@spitzlawfirm.com
                     daniel.dubow@spitzlawfirm.com

          *Attorneys For Plaintiff*

13

## JURY DEMAND

Plaintiff Bernard Starr demands a trial by jury by the maximum number of jurors permitted.

/s/ *Daniel S. Dubow*
Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**